IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,

      Plaintiff,

  v.

J. CHUDY, et al.,

      Defendants.
_____/

No. C 10-3732 CW (PR)

ORDER OF DISMISSAL WITH
LEAVE TO AMEND

INTRODUCTION

Plaintiff, a state prisoner, has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

His motion for leave to proceed in forma pauperis has been granted.

Venue is proper because the events giving rise to the claim are alleged to have occurred at Correctional Training Facility (CTF), which is located in this judicial district. See 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants: CTF Chief Medical Officer J. Chudy,[1] as well as CTF Registered Nurses Leary and Uy. Plaintiff seeks monetary damages.

DISCUSSION

I.   Standard of Review

A federal court must conduct a preliminary screening in any

---

[1] In his complaint, Plaintiff occasionally misspells Defendant Chudy's name as "Chudi"; however, the record shows the correct spelling is "Chudy."

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   case in which a prisoner seeks redress from a governmental entity

2   or officer or employee of a governmental entity.  28 U.S.C.

3   § 1915A(a).  In its review, the court must identify any cognizable

4   claims and dismiss any claims that are frivolous, malicious, fail

5   to state a claim upon which relief may be granted or seek monetary

6   relief from a defendant who is immune from such relief.  Id.

7   § 1915A(b)(1), (2).  Pro se pleadings must be liberally construed.

8   Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

9   1988).

10      To state a claim under 42 U.S.C. § 1983, a plaintiff must

11  allege two essential elements: (1) that a right secured by the

12  Constitution or laws of the United States was violated, and

13  (2) that the alleged violation was committed by a person acting

14  under the color of state law.  West v. Atkins, 487 U.S. 42, 48

15  (1988).

16  II.  Factual Background

17      On June 19, 2009, Plaintiff banged on his cell door to alert

18  Defendant Uy and CTF Correctional Officer Martinus that he had been

19  "experiencing pain and swelling in his lower legs for the last few

20  weeks."  (Compl. at 3.)[2]  Plaintiff asked Defendant Uy to permit

21  him to see a doctor.  Defendant Uy did not refer Plaintiff to see a

22  doctor.  Instead, he directed Plaintiff to complete a Health Care

23  Services Request Form (CDC-7362), which is a form submitted by

24  inmates who are requesting medical care.

25      Ten minutes later, Plaintiff observed CTF Correctional

26

27      [2] Plaintiff attaches fourteen pages to page three of his
    complaint.  The Court has renumbered them pages four through
28  seventeen.

United States District Court
For the Northern District of California

1   Officers Martinus and Hernandez walking on the tier.  He again

2   banged on his cell door for help.  (<u>Id.</u> at 5.)  Officer Hernandez

3   wrote Plaintiff a pass to see Defendant Leary at the infirmary.

4   When Plaintiff arrived at the infirmary, he informed Defendant

5   Leary that "he was experiencing pain and swelling in his lower legs

6   and that he wanted to see a doctor."  (<u>Id.</u>)  Plaintiff expressed

7   his concern that "he may be experiencing poor circulation in his

8   legs which could cause a stroke or heart attack."  (<u>Id.</u> at 5-6.)

9   Defendant Leary informed Plaintiff that he could not see a doctor

10  because CTF was "'short of doctors.'"  (<u>Id.</u> at 5.)

11      Plaintiff alleges that Defendant Leary "made no attempts to

12  locate Plaintiff's medical chart, which would have shown her that

13  Plaintiff was on baby asperin (81 mg ASA E.C.), cholesterol pills

14  (Simvastatin 20 mg) and high blood pressure pills (Atenolol 50

15  mg)."  (<u>Id.</u> at 6.)  Defendant Leary instructed Plaintiff to

16  complete a CDC-7362 form.  She then sent Plaintiff back to his cell

17  without any diagnosis or treatment.  (<u>Id.</u>)

18      Later that same day, Plaintiff filed a 602 inmate appeal

19  alleging that "CTF's medical staff was subjecting him to cruel and

20  unusual punishment."  (<u>Id.</u> at 3.)

21      On July 3, 2009, Plaintiff "alerted the 2nd Watch C/O that he

22  was experiencing 'severe' pain and swelling in his lower legs."

23  (<u>Id.</u> at 7.)  Plaintiff was given a "temporary inmate pass to the

24  infirmary," where he was told by CTF Correctional Officer McDonald

25  to wait on a bench outside.  Officer McDonald alerted Defendant

26  Leary that Plaintiff was waiting outside the infirmary.  Defendant

27  Leary then informed Plaintiff "that he could not see a doctor due

28  to Ad-Seg inmates being seen that day."  (<u>Id.</u>)  Without "taking any

3

United States District Court
For the Northern District of California

1  of Plaintiff's vital signs or examining his legs," Defendant Leary
2  directed that Plaintiff be escorted back to his cell.

3      On July 6, 2009, Plaintiff saw a triage nurse for the pain and
4  swelling in his lower legs.  The triage nurse advised Plaintiff to
5  elevate both of his legs.  Plaintiff responded that "it was
6  impossible for him to elevate his legs because CTF's medical staff
7  has not given him any type of device" with which to elevate his
8  legs.  (Id. at 8.)  Plaintiff alleges he "still has not received
9  any type of medical device from CTF officials that would help
10 Plaintiff elevate his legs."  (Id.)

11     On August 6, 2009, Plaintiff was "finally" seen by CTF
12 physician Koziol, who "issued Plaintiff pain medication for his
13 lower extremities."  (Id. at 9.)

14     Plaintiff alleges that "during the fifty three days [he] was
15 without pain medication, he was so psychologically distraught that
16 he had to cancel all of his mental health sessions" because he
17 "believed he was going to die from a stroke or heart attack."
18 (Id.)  During this time, Plaintiff was also unable to exercise
19 because "he was suffering in pain."  (Id.)

20     At some point after being examined by CTF physician Koziol,
21 Plaintiff "could no longer take the pain medication that was issued
22 on 08/11/09 due to the medication irritating his stomach."  (Id. at
23 10.)

24     On August 20, 2009, Plaintiff received the second level of
25 review response for his inmate grievance filed on June 19, 2009.
26 The response stated that a podiatry consultation was ordered to
27 address the severe pain and swelling in his lower legs; however,
28 Plaintiff did not receive the podiatry consultation at that time.

4

United States District Court
For the Northern District of California

Plaintiff alleges that although Defendant Chudy "personally oversaw Plaintiff's medical situation," he "did not make sure that Plaintiff received the podiatry consult that was ordered . . . ." (<u>Id.</u> at 11.)  Plaintiff alleges that because Defendant Chudy "failed to make sure Plaintiff received the podiatry consult," he "suffered in severe pain and swelling in his lower extremities for '105 days.'"  (<u>Id.</u>)

On December 3, 2009, Plaintiff saw CTF physician Jamari, who ordered Plaintiff a "'second' podiatry consult," because "feet problems can cause pain and swelling in the lower leg area."  (<u>Id.</u> at 12.)  Plaintiff alleges that Defendant Chudy "failed to make sure that Plaintiff received the podiatry consult" for "an additional '138 days,'" during which time Plaintiff "suffered in severe pain and swelling in his lower extremities."  (<u>Id.</u>)

On April 20, 2010, Plaintiff filed an inmate grievance alleging "CTF prison officials were subjecting him to cruel and unusual punishment by not providing the podiatry consult in order to obtain new orthopedic shoes."  (<u>Id.</u> at 13.)  Plaintiff also explained that "because he was a mental health patient, exercising was a critical tool to help manage his anxieties."  (<u>Id.</u> at 15.)  He further claimed that "without the correct orthopedic shoes, I can't participate in jogging or walking to relieve any of my anxieties which could result to [sic] sinking me into further depression."  (<u>Id.</u>, Ex. C at C-3.)

On June 22, 2010, a podiatry consultation was ordered for the third time, and Plaintiff was seen by a podiatrist, who informed Plaintiff that his "feet [sic] structure had totally collapsed and that he would not rule out arthritis, which would be the cause for

United States District Court
For the Northern District of California

1  the severe pain and swelling in the lower extremities . . . ."

2  (Id.)  The podiatrist ordered x-rays of Plaintiff's feet.

3     Plaintiff alleges that "during the 329 days [he] suffered with

4  the severe pain and swelling in his lower extremities, he was

5  unable to exercise outside and has been virtually confined to his

6  cell bed due to his limited mobility."  (Id. at 14.)  Plaintiff

7  also claims that as of August 4, 2010, the date he signed the

8  complaint, his "lower extremities have gotten worse over the last 7

9  to 8 months," stating:

10        . . . Plaintiff has great difficulty in just standing
          up without shoes on.  When Plaintiff stands up without
11        his shoes on in the cell to walk two feet to the
          toilet, there is a stabbing pain shooting in the arch
12        of Plaintiff's left foot.
              Moreover, . . . (both arches) have gotten so bad
13        that they are sore to the touch when Plaintiff is
          laying down.  When Plaintiff walks to chow he is always
14        experiencing stabbing pains on the top of his feet and
          in both arches, plus it feels as though a claw is
15        pulling down on his calves.

16  (Id. at 14-15.)

17  III. Deliberate Indifference Claim

18     Deliberate indifference to serious medical needs violates the

19  Eighth Amendment's proscription against cruel and unusual

20  punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The

21  analysis of a claim of deliberate indifference to serious medical

22  needs involves an examination of two elements: (1) a prisoner's

23  serious medical needs and (2) a deliberately indifferent response

24  by the defendants to those needs.  McGuckin v. Smith, 974 F.2d

25  1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX

26  Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)

27  (en banc).

28     A serious medical need exists if the failure to treat a

United States District Court
For the Northern District of California

prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104).  Examples of indications that a prisoner has a serious need for medical treatment are the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

The plaintiff must also show that the defendant knew the plaintiff faced "substantial risk of serious harm" yet failed to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A prison official "who act[s] reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845.  Further, a prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id.

Therefore, in order to establish deliberate indifference, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  A defendant's actions need not be "egregious" nor need they result in "significant injury" in order to establish a violation of the prisoner's federal constitutional rights, McGuckin, 974 F.2d at 1059; however, the existence of serious harm tends to support an inmate's deliberate indifference claim.  Jett v. Penner, 439 F.3d

1091, 1096 (9th Cir. 2006).

Assuming Plaintiff's medical needs were "serious," Plaintiff must allege facts which support a finding of deliberate indifference to those needs by Defendants Chudy, Leary and Uy. Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. See McGuckin, 974 F.2d at 1062.

Here, Plaintiff alleges that Defendants Uy and Leary, who are registered nurses, acted with deliberate indifference to his serious medical needs when, on June 19, 2009, they responded to his complaints of pain and swelling in his legs by telling him to fill out a medical request form rather than immediately referring him to see a doctor.  Plaintiff's allegations, however, do not state a claim for deliberate indifference because the facts do not support an inference that it was unreasonable for Defendants to follow prison procedures and require Plaintiff to fill out a medical request form before being seen by a doctor.  Specifically, based on the facts alleged, there is no indication that Plaintiff was suffering from a medical emergency that required Defendants to bypass prison procedures and call for immediate medical care for Plaintiff.

Plaintiff further alleges that on July 3, 2009, Defendant Leary acted with deliberate indifference to his serious medical needs when, after a correctional officer allowed Plaintiff to go to the infirmary based on Plaintiff's complaints of pain and swelling in his legs, Leary told Plaintiff he could not see a doctor because

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Ad-Seg inmates were being seen that day and sent Plaintiff back to his cell without taking his vital signs or examining his legs. Again, however, Plaintiff's allegations do not state a claim for deliberate indifference because he has not alleged facts that show he faced a substantial risk of harm, that Defendant Leary, knowing of such risk, acted unreasonably, and that Defendant Leary's actions resulted in harm to Plaintiff.

Finally, Plaintiff alleges that Defendant Chudy acted with deliberate indifference to Plaintiff's serious medical needs because Chudy failed to ensure that Plaintiff receive timely podiatry consulations.  Plaintiff's allegations fail to state a cognizable claim, however, because they are entirely conclusory. Specifically, Plaintiff has not alleged facts that show that Chudy, knowing that Plaintiff faced a substantial risk of serious harm, acted unreasonably.  In particular, Plaintiff has not alleged facts that show Chudy was the individual who was responsible for ensuring the podiatry consultations were scheduled.

Accordingly, for the above reasons, Plaintiff's Eighth Amendment claims against Defendants Uy, Leary and Chudy are DISMISSED for failure to state a cognizable claim for relief. Plaintiff may amend his complaint to cure the noted pleading deficiencies if he can, in good faith, allege facts that show Defendants acted with deliberate indifference to his serious medical needs.

                              CONCLUSION

     For the foregoing reasons, the Court orders as follows:

     1.   Plaintiff's Eighth Amendment claim for deliberate

United States District Court
For the Northern District of California

indifference to serious medical needs is DISMISSED with leave to amend.

2.   Within thirty (30) days from the date of this Order Plaintiff may file an amended complaint as set forth above. Plaintiff must use the attached civil rights form, write the case number for this action -- C 10-3732 CW (PR) -- on the form, clearly label the complaint "Amended Complaint," and complete all sections of the form.  Because an amended complaint completely replaces the original complaint, Plaintiff must include in it all the claims he wishes to present.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  He may not incorporate material from the original complaint by reference.

The failure to file an amended complaint by the thirty-day deadline will result in the dismissal of this action without prejudice.

3.   The Clerk of the Court shall send Plaintiff a blank civil rights form along with a copy of this Order.

IT IS SO ORDERED.

DATED: 9/9/2011

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

10

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


ERIC L GONZALEZ,

               Case Number: CV10-03732 CW

      Plaintiff,

               **CERTIFICATE OF SERVICE**

  v.


J CHUDY et al,


      Defendant.

_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 9, 2011, I SERVED a true and correct copy(ies) of the attached **and a copy a blank civil rights form**, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.



Eric L. Gonzalez E66196

Correctional Training Facility (Central)

P.O. Box 689

FW 235 Low

Soledad,  CA 93960-0689


Dated: September 9, 2011

               Richard W. Wieking, Clerk

               By: Nikki Riley, Deputy Clerk