IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERIC L. GONZALEZ,

     Plaintiff,

    *v.*

DR. J. CHUDY, et al.,

     Defendants.

No. C 10-3732 CW (PR)

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT;
ADDRESSING NON-DISPOSITIVE
MOTIONS

(Docket nos. 17, 18, 19, 23,
26)

—————————————————————————/

United States District Court
For the Northern District of California

INTRODUCTION

Plaintiff, a state prisoner incarcerated at the Correctional Training Facility (CTF) at Soledad, filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs.

Defendants have filed a motion for summary judgment. Plaintiff has opposed the motion, Defendants have filed a reply and Plaintiff has filed a sur-reply. Also pending are various non-dispositive motions filed by the parties.

For the reasons discussed below, the Court GRANTS Defendants' motion for summary judgment.

BACKGROUND

The following facts are taken from Plaintiff's verified amended complaint (Docket no. 8), and the parties' admissible evidence submitted in support of and in opposition to the motion for summary judgment. The facts are undisputed unless otherwise noted.

Plaintiff claims Defendants Dr. Joseph Chudy, Dr. Darrin

1

**United States District Court**
For the Northern District of California

Bright and Dr. Michael Sepulveda provided him with constitutionally inadequate medical care by failing to arrange a timely consultation for him with a podiatrist.  Each of the Defendants is a licensed physician and is being sued for actions taken while acting as the Chief Medical Officer (CMO) at CTF.

The allegations in the amended complaint concern events that took place at CTF between August 20, 2009 and September 9, 2010. Dr. Chudy was the CMO at CTF from July 2006 through June 2009, and from October 2009 through November 2010.  Decl. Dr. Chudy Supp. Mot. Summ. J. (Chudy Decl.) ¶ 2.  When Dr. Chudy was out for three months for medical reasons, Dr. Sepulveda was the acting CMO from July 2009 through September 2009.  Decl. Dr. Sepulveda Supp. Mot. Summ. J. (Sepulveda Decl.) ¶ 2.  When Dr. Sepulveda was out for one day on August 20, 2009, Dr. Bright, a CTF staff physician who also acted as Chief Physician, served as the acting CMO for that day only.  Decl. Dr. Bright Supp. Mot. Summ. J. (Bright Decl.) ¶ 2.

As described by Defendants:

> The Chief Medical Officer is responsible for planning and directing the work of the Clinical Care Services staff, for supervising subordinate department heads, for implementing general policy directives, directing the clinical work of the department, advising Health Care Services Division, and acting as a member of the Warden's executive staff.  As a senior member of the health care management team, the CMO works with other division managers and supervisors to improve quality, resolve problems, and develop programs.  The CMO manages second level 602 appeals by reviewing and evaluating determinations by the appeals coordinator.

Chudy Decl. ¶ 2.

Plaintiff's medical records and administrative appeals show that he first complained of swelling in both legs on May 27, 2009,

when he was seen by CTF Chief Physician Dr. Bright for bilateral emergency leg edema.  Sepulveda Decl. ¶ 5.  Based on the swelling and Plaintiff's past medical conditions of chest pain, high blood pressure and high cholesterol, Dr. Bright ordered an electrocardiogram (EKG), chest x-rays and blood tests.  Bright Decl. ¶ 5.  On June 9, 2009, Plaintiff complained to a nurse about lower leg pain; his vital signs were found to be normal.  Amen. Compl. Ex. A4.  On June 16, 2009, Plaintiff was advised that all of the tests ordered by Dr. Bright came back within normal limits. Bright Decl. ¶ 5.

On June 19, 2009, Plaintiff complained to a nurse of pain in both of his calves and told her that blood tests previously had been ordered for his symptom of swollen ankles.  Pl.'s Opp'n Mot. Summ. J. (Opp'n) Ex. A10.  The nurse provided him with a form to request medical attention because his condition was not an emergency.  Bright Decl. ¶ 5.  He then filed a grievance claiming inadequate medical care for the pain and swelling in his calves, and expressed his fear that he might be experiencing poor circulation that could cause a stroke or heart attack (No. CTF-14-09-11915) (June 602).  Id.; Opp'n Ex. A10.  On June 24, 2009, Plaintiff's appointment to see CTF physician Dr. Lim-Javate -- for what was noted in the medical record as athlete's foot -- was rescheduled to take place in two to four weeks, due to time constraints.  Amen. Compl. Ex. A8, Opp'n Ex. A14.

On July 3, 2009, Plaintiff came to the infirmary and complained to a nurse that both of his lower legs and ankles were swollen and in pain.  She told him that he could not be seen by doctors at that time because they were seeing prisoners in

United States District Court
For the Northern District of California

3

administrative segregation.  Bright Decl. ¶ 6.  That same day,

Plaintiff filed a second grievance claiming inadequate medical

care because he required emergency care and the nurse was not

qualified to diagnose his medical needs (No. CTF-14-09-12024)

(July 602).  Id.  On July 7, 2009, Plaintiff submitted a medical

care services request form for the "severe pain and swelling in my

lower legs and ankles."  Bright Decl. Ex. A19.[1]  On July 8, he was

seen by a nurse, who noted that neither of his lower legs was

swollen but both legs had some redness and were warm to the touch.

She instructed Plaintiff to elevate both of his lower legs while

resting and to return to the clinic if his condition worsened.

Id.  The next day, July 9, CTF medical staff renewed Plaintiff's

medications for high blood pressure (Atenolol), high cholesterol

(Simvastatin) and provided an inhaler for breathing difficulty and

chest tightness (Proventil).  Bright Decl. ¶ 6.

On July 27, 2009, Dr. Sepulveda responded, at the first level

of review, to Plaintiff's June 602 concerning inadequate care for

the pain and swelling in his legs.  Dr. Sepulveda granted

Plaintiff's request to receive adequate medical care, in

accordance with prison regulations, for his leg pain and swelling.

Sepulveda Decl. ¶ 7 & Ex. A6-7.  It was Dr. Sepulveda's opinion

that Plaintiff already was receiving adequate care for his leg

swelling, because CTF doctors were exploring the possible

relationship between the leg swelling and Plaintiff's heart

_____

[1] None of the exhibits attached to any Defendant's
declaration include page numbers.  The Court therefore identifies
the exhibits with the page numbers inserted on the documents by
the Court's electronic filing system (ECF).

condition.  Sepulveda Decl. ¶ 7.

On August 6, 2009, Plaintiff was seen by CTF Nurse Practitioner (NP) Maria Koziol for complaints of foot pain. Sepulveda Decl. Ex. A20.  She theorized that the cause of the pain might be that Plaintiff's orthopedic shoes were not well-fitted. Id.  She submitted a Routine Request for Service (RFS) form for Plaintiff to be seen by a podiatrist.  Id.  The RFS had to be reviewed and approved by the Chief Physician, Dr. Bright. Sepulveda Decl. ¶ 8.

On August 20, 2009, a response was issued with respect to Plaintiff's July 602 asking that he receive emergency medical care for his leg swelling and pain and be diagnosed and treated by a doctor, not a nurse.[2]  Bright Decl. ¶ 8 & Ex. A13.  The July 602 was investigated by RN L. Hernandez, who interviewed Plaintiff and wrote the response.  With respect to the RFS submitted by NP Koziol for a podiatrist consult, RN Hernandez wrote: "08/06/09 you were evaluated by the Nurse Practitioner and appropriate medication and treatment was [sic] ordered (Request for Service/Podiatry Consult)."  Id.  Plaintiff's request to be diagnosed and treated by a doctor was partially granted in that "[a]ll patients are assigned to a Primary Care Physician," and Plaintiff had been evaluated by both a doctor and a nurse practitioner.  Id.

Dr. Bright, acting in his capacity as Acting CMO for the day, approved the response written by RN Hernandez.  Id.  According to Dr. Bright, he partially granted Plaintiff's request to be

_____

[2] The July 602 went directly to the second level of review.

diagnosed and treated by a doctor because: "I personally examined [Plaintiff] on May 27, 2009 and he was seen by N.P. Koziol on August 6, 2009, thus he saw two medical providers for his leg swelling and pain, in addition to multiple visits with CTF's registered nurses, in a span of less than three months."  Bright Decl. ¶ 8.

On August 25, 2009, Dr. Bright, acting in his capacity as Chief Physician, reviewed NP Koziol's RFS for Plaintiff to be seen by a podiatrist.  He avers the following with respect to his review of the RFS:

> As Chief Physician, I had the responsibility of reviewing and approving the RFS.  On August 25, 2009, I denied Mr. Gonzalez's request to see the podiatrist as Mr. Gonzalez was already receiving adequate treatment for his leg swelling.  At the time of the denial, I (along with CTF medical staff) still believed that Mr. Gonzalez's leg swelling and pain was possibly related to a more serious heart issue (including high blood pressure) and we were attempting to treat those underlying issues.  The denial of the podiatrist visit was justified because we believed that a podiatrist could not treat his heart issues, thus there was no reason to approve the visit.  In addition, the podiatrist, Dr. Kristal, was only available for urgent consults as he covered four different CDCR facilities in 2009 and 2010: CTF, Avenal State Prison, Pleasant Valley State Prison and Salinas Valley State Prison.  During that period, emergency cases were sent to the hospital whereas routine podiatric needs were provided by the primary care physicians.  Mr. Gonzalez's swelling was not considered a life-threatening emergency.

Bright Decl. ¶ 7.

Also on August 25, 2009, Dr. Sepulveda responded at the second level of review to Plaintiff's June 602 requesting adequate medical care.  The 602 was partially granted, in that Dr. Sepulveda determined Plaintiff was receiving adequate medical care for his problems of leg swelling and pain.  Sepulveda Decl. Ex. A8.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

On September 12, 2009, CTF doctors stopped Plaintiff's beta blockers, believing they might be the cause of the leg swelling and pain. Chudy Decl. ¶ 6. On September 18, 2009, the Prison Law Office (PLO) received a letter from Plaintiff complaining about his failure to receive medical care. Amen. Compl. Ex. A15. On September 23, 2009, Plaintiff was sent for a cardiology consultation and stress test for evaluation of his complaints of chest pain. Chudy Decl. Exs. A24 & A25. No abnormalities were noted other than an "asymptomatic abnormal blood pressure response during the test." Id. Ex. A24. On October 19, 2009, the PLO wrote to the Attorney General's Office requesting further information about Plaintiff's blood test results, leg pain and swelling. Amen. Compl. Ex. A17. On November 9, 2009, Dr. Chudy advised the PLO that the swelling was a side effect of the beta blockers, which had been stopped on September 12, 2009, and that CTF doctors were treating the swelling as a symptom of underlying heart issues. Chudy Decl. ¶ 13a. The PLO wrote a letter to Plaintiff on November 30, 2009, informing him of their communications with Dr. Chudy. Amen. Compl. Ex. A 17.

On November 23, 2009, Plaintiff requested new orthopedic shoes because his arch supports were not working. Chudy Decl. ¶ 7 & Ex. A26. On December 3, 2009, Plaintiff was seen by his treating physician, Dr. Jamari, who approved his request for new orthopedic inserts. Id. & Ex. A28. Plaintiff received the inserts from the specialty clinic on December 18, 2009. Id. & Ex. A29.

On January 7, 2010, Dr. Chudy spoke a second time with the PLO regarding Plaintiff's complaints of chest pains and leg pain

and swelling.  Although he previously told the PLO that
Plaintiff's records did not suggest serious heart disease, he also
noted that the combination of chest pain and leg swelling made it
difficult to rule out the possibility.  Chudy Decl. ¶ 13b.

In March 2010, Plaintiff received Director's level responses
to both his June and July 602s.  Both appeals were denied because
Plaintiff's medical records showed that he had been evaluated by
licensed clinical staff and was receiving treatment deemed
medically necessary.  Chudy Decl. Exs. A11-13 (June 602) & A16-18
(July 602).

On June 1, 2010, Plaintiff submitted a health care services
request form complaining of continuing pain in both feet despite
the arch supports.  Chudy Decl. ¶ 8 & Ex. A31.  On June 21, 2010,
he saw his primary care physician, who submitted a routine RFS
recommending that he see a podiatrist to reassess the efficacy of
his orthotics and that his feet be x-rayed.  Id. & Exs. A32 & A33.
On July 7, 2010, Dr. Chudy approved the request to see the
podiatrist because the medical records showed a decreased
likelihood that the leg swelling and pain were symptoms of a more
serious heart issue.  Chudy Decl. ¶ 8.  On July 8, 2010, Dr. Chudy
responded to Plaintiff's most recent medical appeal for new
orthopedic shoes and partially granted the appeal by confirming
approval of the RFS to see the podiatrist, who would determine
appropriate treatment and the need for additional orthotics.  Id.
& Ex. A19.

On July 22, 2010, Plaintiff was seen by the CTF podiatrist,
Dr. Ira Kristal, who ordered x-rays of Plaintiff's feet.  Chudy
Decl. Ex. A28.  The x-rays were taken on July 27, 2010.  Chudy

United States District Court
For the Northern District of California

8

Decl. ¶ 9 & Ex. A30.  Plaintiff was diagnosed with mild bunion deformities in both great toes.  Id.  The x-ray results noted that the appearance of the right and left feet were "otherwise unremarkable".  Id.  There was no evidence of recent fracture, dislocation or other osseous abnormality.  Id.

On September 9, 2010, Dr. Kristal submitted a routine RFS for Plaintiff to be seen by a specialist in order to obtain "functional orthotics" for his feet.  Opp'n Ex. A37.  On May 26, 2011, Plaintiff was seen by prosthetic and orthotic consultant Dr. Randy Furushiko, who found that Plaintiff had "significant pronated feet" and poorly fitted shoes.  Id.  He recommended that Plaintiff receive customized orthotics and "extra depth" shoes to accommodate them.  Id.

DISCUSSION

I.   Non-Dispositive Motions

Plaintiff has filed three motions asking the Court to take judicial notice of his having served Defendants with requests for answers to interrogatories.  Discovery matters are not a proper subject for judicial notice.  Accordingly, these motions are DENIED.

After Plaintiff filed his amended complaint, Defendants moved to file an amended answer thereto.  The motion is GRANTED; the amended answer was filed on May 7, 2012.

II.  Legal Standard for Summary Judgment

Summary judgment is only proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are

those that may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson, 477 U.S. at 248 (holding fact to be material if it might affect outcome of suit under governing law).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a

United States District Court
For the Northern District of California

disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

III. Deliberate Indifference Standard

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need.  See id., 974 F.2d at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Id.  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  Id. at 1059-60.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    A prison official is deliberately indifferent if he knows

2  that a prisoner faces a substantial risk of serious harm and

3  disregards that risk by failing to take reasonable steps to abate

4  it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison

5  official must not only "be aware of facts from which the inference

6  could be drawn that a substantial risk of serious harm exists,"

7  but he "must also draw the inference."  Id.  In order for

8  deliberate indifference to be established, therefore, there must

9  be a purposeful act or failure to act on the part of the defendant

10 and resulting harm.  See McGuckin, 974 F.2d at 1060.

11    Deliberate indifference may be shown when prison officials

12 deny, delay or intentionally interfere with medical treatment, or

13 it may be shown in the way in which they provide medical care.

14 See id. at 1062.  But neither a difference of opinion between a

15 prisoner-patient and prison medical authorities regarding

16 treatment nor a showing of nothing more than a difference of

17 medical opinion as to the need to pursue one course of treatment

18 over another is sufficient to establish deliberate indifference.

19 See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir. 2004).  In

20 order to prevail on a claim involving choices between alternative

21 courses of treatment, a plaintiff must show that the course of

22 treatment the doctors chose was medically unacceptable under the

23 circumstances, and that they chose this course in conscious

24 disregard of an excessive risk to the plaintiff's health.  Id. at

25 1058.  Further, individual defendants cannot be held liable for

26 acting with deliberate indifference when they are unable to render

27 or cause to be rendered medical treatment because of a lack of

28 resources that is not within their power to cure.  Peralta v.

United States District Court
For the Northern District of California

1  Dillard, 704 F.3d 1124, 1129 (9th Cir. 2013).

2  IV.  Analysis

3       Plaintiff claims that Defendants acted with deliberate
4  indifference to his serious medical needs between August 20, 2009
5  and September 9, 2010, by failing to ensure that he see a
6  podiatrist for his symptoms of foot and leg swelling and pain.

7       A.    Serious medical need

8       Defendants acknowledge that a triable issue exists as to
9  whether Plaintiff's chronic leg and foot pain constitute a serious
10 medical need.  The Court, for purposes of the present motion,
11 assumes without deciding that Plaintiff has shown that he has a
12 serious medical need.

13      B.    Deliberate Indifference

14      Defendants argue that Plaintiff cannot show that they acted
15 with deliberate indifference by not ensuring that he see a
16 podiatrist during the relevant time period because 1) no visit
17 with a podiatrist was ordered prior to July 8, 2010; 2) no
18 podiatrist was readily available for non-emergency podiatric
19 concerns; 3) when acting as CMO Defendants were not responsible
20 for ensuring that Plaintiff see a podiatrist; and 4) each
21 Defendant responded medically appropriately to Plaintiff's medical
22 appeals.

23      Plaintiff responds that Defendants, in their capacity as
24 CMO's and, therefore, reviewers of his medically-related
25 administrative appeals, had the authority and were required to
26 ensure that he was receiving constitutionally adequate medical
27 care.

28

United States District Court
For the Northern District of California

The Court finds that the question whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs does not turn on whether they could have ensured Plaintiff's access to a podiatric visit that had not been ordered yet or whether they personally were responsible for making podiatric referrals.  Instead, the Court reviews the evidence to determine if it raises a genuine issue of material fact as to whether Defendants were aware of Plaintiff's serious medical need and acted with deliberate indifference by failing to take reasonable steps to abate harm.  See Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).

        1.    Dr. Bright

It is undisputed that, during the relevant time period, Dr. Bright was a CTF staff physician and also acted as the Chief Physician, responsible for reviewing physician requests to refer prisoners to specialists.  He acted as CTF CMO for one day, on August 20, 2009.

It also is undisputed that Dr. Bright was involved in Plaintiff's medical care on the following three occasions only: 1) On May 27, 2009, Dr. Bright, acting as a staff physician, saw Plaintiff for an emergency complaint of leg swelling and, based on the swelling and Plaintiff's past medical conditions of chest pain, high blood pressure and high cholesterol, ordered an EKG, chest x-rays and blood tests; 2) on August 20, 2009, acting as CMO for that day only, Dr. Bright partially granted Plaintiff's July 602 request to receive appropriate medical care and be seen by a doctor instead of a nurse; and 3) on August 25, 2009, acting as Chief Physician, Dr. Bright denied NP Koziol's request that

14

United States District Court
For the Northern District of California

1  Plaintiff be referred to a podiatrist.

2       Plaintiff does not object to Dr. Bright's actions on May 27,
3  2009.  He maintains, however, that Dr. Bright acted with
4  deliberate indifference when he denied the RFS on August 25.
5  Specifically, Plaintiff maintains that Dr. Bright knew that
6  Plaintiff's foot swelling was not the result of a heart condition
7  and that he required a podiatric consult.  Plaintiff bases his
8  argument on the following: 1) the test results that had been
9  ordered by Dr. Bright in May showed that Plaintiff did not have a
10 heart condition;

11 2) Dr. Bright's partial grant of the July 602 on August 20
12 indicated his approval of RN Hernandez's statement that, when
13 Plaintiff was evaluated by NP Koziol, "appropriate medication and
14 treatment was [sic] ordered (Request for Service/Podiatry
15 Consult);" 3) Plaintiff's July 602 states that foot pain was the
16 initial source of his leg swelling; and 4) on June 24, 2009, CTF
17 physician Dr. Lim-Javate wrote in his medical notes that Plaintiff
18 required further attention for his feet.

19      Dr. Bright maintains that the undisputed evidence shows that
20 he did not act with deliberate indifference to Plaintiff's serious
21 medical needs because his decision to deny the RFS was based on
22 his conclusion that Plaintiff's problems were due to his numerous
23 heart-related symptoms, as well as on the unavailability of the
24 podiatrist.

25      The Court, having reviewed the parties' evidence and
26 considered it in the light most favorable to Plaintiff, finds
27 Plaintiff's evidence of deliberate indifference insufficient for
28 the following reasons.

United States District Court
For the Northern District of California

As an initial matter, the fact that the EKG, chest x-rays and blood tests ordered by Dr. Bright in May 2009 all came back within normal limits does not establish that Dr. Bright knew that Plaintiff's leg swelling was not being caused by a heart-related condition.  Instead, the evidence shows that Plaintiff, at that time, had complained of chest pain and breathing difficulty and was taking certain medications, including beta blockers, to control possible causes of heart problems, such as high blood pressure.  Consequently, even though the test results came back within normal limits, it was reasonable for Dr. Bright to consider whether Plaintiff's leg swelling and pain might be attributable to the medications being used to keep possible heart-related problems under control.  Notably, after the tests came back without negative implications, Dr. Bright and other CTF doctors, including Dr. Chudy, surmised that the swelling might be a side-effect of the beta blockers.  As a result, those drugs were discontinued on September 12, 2009.  Additionally, based on Plaintiff's history of a possible heart condition, CTF doctors ordered that he undergo a stress echocardiogram on September 23, 2009.  The report from that test indicated that he had a history of all-night chest pain, heart palpitations and skipped heartbeats.  Bright Decl. ¶¶ 23-24.

Further, the evidence does not support Plaintiff's contention that Dr. Bright's approval of the August 20, 2009 second level response to Plaintiff's July 602 shows that Dr. Bright knew that Plaintiff needed to see a podiatrist and that NP Koziol's RFS should be approved.  Plaintiff assumes that the July 602 response that NP Koziol acted appropriately by addressing Plaintiff's concerns and submitting the RFS, was a determination on the merits

16

of the RFS.  An RFS requires approval from the Chief Physician
before the referral can be implemented.  Because there is no
evidence that the RFS had been forwarded to Dr. Bright to review
as Chief Physician before the second level response was issued,
the record does not support the conclusion that Dr. Bright should
have authorized the RFS when he reviewed the July 602 in his
capacity as Acting CMO.

It is undisputed that Dr. Bright based his denial of the RFS
in part on the fact that the podiatrist, Dr. Kristal, was not
readily available to see patients at CTF.  Given that a podiatrist
was not immediately available, the alternatives were
hospitalization or treatment by Plaintiff's primary care
physician.  The evidence shows that hospitalization was not
necessary and that Plaintiff was treated by his primary care
physician.  Denial of immediate access to a specialist in a non-
emergency situation such as this does not amount to deliberate
indifference.  See Peralta, 704 F.3d at 1129.

Finally, the Court finds unpersuasive Plaintiff's argument
that Dr. Bright acted with deliberate indifference by focusing on
the swelling in Plaintiff's legs rather than his foot pain.
According to Plaintiff, his medical grievances and Dr. Lim-
Javate's medical notes from June 24, 2009 make clear that he was
complaining about foot pain that he believed was the cause of his
leg swelling.  The Court has reviewed the evidence and finds it
does not support Plaintiff's contention.  Instead, Plaintiff's
June and July 602s and his visits with medical staff focus almost
exclusively on his concerns about leg swelling and pain, which he
deems an emergency because such symptoms might indicate poor

United States District Court
For the Northern District of California

17

circulation that could lead to a heart attack or stroke.  Opp'n
Exs. A10, A17, A22; Bright Decl. Ex. A19.  Moreover, the notes
from Dr. Lim-Javate are inconsequential because they indicate only
that Plaintiff was to be seen for "athletes' feet" and that Dr.
Lim-Javate was unable to see Plaintiff that day because of time
constraints.  Amen. Compl. Ex. A8, Opp'n Ex. A14.

Based on the above, the Court finds that, even when the facts
are considered in a light most favorable to Plaintiff, he has
failed to raise a triable issue with respect to whether Dr. Bright
acted with deliberate indifference to his serious medical needs.
Instead, the undisputed evidence shows that Dr. Bright had a
reasonable basis for his opinion that heart issues caused
Plaintiff's swelling and that a referral to a podiatrist was not
indicated.  Even if Dr. Bright had believed that Plaintiff's
problems were podiatric, the delay in providing specialist
treatment did not amount to deliberate indifference in view of the
unavailability of a podiatrist at CTF because of staffing
constraints and the non-emergency nature of the condition.
Accordingly, summary judgment is GRANTED in favor of Dr. Bright.

2.      Dr. Sepulveda

The undisputed evidence shows that Dr. Sepulveda was CMO at
CTF from July 2009 through September 2009, and that from October
2009 through December 2010 he was CMO at Salinas Valley State
Prison and had no affiliation with CTF.  Sepulveda Decl. ¶ 2.  Dr.
Sepulveda never personally treated Plaintiff.  Sepulveda Decl.
¶ 10.  His interactions with Plaintiff concerning inadequate
medical care were limited to his first and second level responses
to Plaintiff's June 602, on July 27 and August 25, 2009,

respectively.

Plaintiff claims Dr. Sepulveda acted with deliberate indifference to his serious medical needs when, in the second level response to Plaintiff's June 602 on August 25, 2009, Dr. Sepulveda failed to address the fact that, on that same date, Dr. Bright had denied the RFS referral to a podiatrist.  Plaintiff maintains this shows Dr. Sepulveda intentionally disregarded Plaintiff's need to see a podiatrist.  Additionally, Plaintiff argues that Dr. Sepulveda should have addressed the issue and ensured that Plaintiff see a podiatrist because Dr. Sepulveda knew, from Plaintiff's medical records, that the leg swelling was not related to a heart condition.

The evidence does not support Plaintiff's contentions.  The record shows that on August 25, 2009, Dr. Sepulveda partially granted Plaintiff's June 602 requesting adequate medical care for his leg pain and swelling because Dr. Sepulveda determined that Plaintiff was receiving adequate care.  Further, in the response, Dr. Sepulveda noted that, on August 20, 2009, "an RFS for stress test and podiatry consult were ordered" and that "[a]ll RFS requests will be reviewed by the Chief Physician & Surgeon for InterQual criteria and approval/denial."  Sepulveda Decl. Ex. A9.

Contrary to Plaintiff's assertion that this response shows that Dr. Sepulveda intentionally disregarded Dr. Bright's denial of the RFS, it shows only that Dr. Sepulveda was not aware of the denial, which Dr. Bright issued the same day that Dr. Sepulveda issued the second level response.  Dr. Sepulveda cannot be found to have acted with deliberate indifference simply because he responded to Plaintiff's 602 without being aware of Dr. Bright's

United States District Court
For the Northern District of California

19

denial of the RFS.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (finding no constitutional right to the proper functioning of a prison administrative appeal system).

Plaintiff also argues Dr. Sepulveda should have ensured that he be seen by a podiatrist because he knew, based on Plaintiff's medical records, that Plaintiff's complaints of leg swelling and pain were not related to a heart condition.  However, based on Plaintiff's medical records showing complaints of chest pain and heart palpitations as well as his medication for high cholesterol and blood pressure, it was not unreasonable for Dr. Sepulveda to conclude that the swelling and pain might be related to heart issues.  Sepulveda Decl. ¶¶ 5-8.  Further, Dr. Sepulveda surmised that, in addition to a possible heart condition, Plaintiff's swelling could have been the result of the beta blockers he took as blood pressure medication.  Consequently, as noted above, CTF doctors stopped Plaintiff's beta blockers on September 12, 2009, but continued to monitor his heart issues.  Sepulveda Decl. ¶¶ 9-10.

Based on the above, the Court finds Plaintiff has failed to raise a triable issue with respect to whether Dr. Sepulveda acted with deliberate indifference to his serious medical needs. Instead, the evidence shows a difference of opinion which was neither medically unacceptable nor held "in conscious disregard of an excessive risk" to Plaintiff's health.  Toguchi, 391 F.3d at 1058.  Accordingly, summary judgment is GRANTED in favor of Dr. Sepulveda.

//

//

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

            3.      Dr. Chudy

2       Plaintiff alleges that Dr. Chudy acted with deliberate

3  indifference to his serious medical needs by failing to ensure

4  that he see a podiatrist between August 20, 2009 -- when NP Koziol

5  submitted the RFS -- and September 9, 2010.  The evidence is

6  undisputed that Dr. Chudy served as CMO at CTF from July 2006

7  through November 2010 and was on medical leave from July 2009

8  through September 2009.  As noted above, during that three month

9  period Dr. Sepulveda was acting CMO.

10      It also is undisputed that Dr. Chudy never personally treated

11 Plaintiff.  Instead, the evidence shows that Dr. Chudy's

12 involvement in Plaintiff's medical care was limited to the

13 following.

14      On November 19, 2009, Dr. Chudy spoke with the PLO regarding

15 Plaintiff's leg swelling.  He advised the PLO that the swelling

16 was a side effect of the beta blockers that were stopped on

17 September 9, 2009.  He also discussed the CTF medical team's

18 treatment of Plaintiff's leg swelling as a symptom of underlying

19 heart issues.  Chudy Decl. ¶ 13a.

20      On January 7, 2010, Dr. Chudy spoke a second time with the

21 PLO regarding Plaintiff's complaints of chest pains and leg pain

22 and swelling.  Although he previously told the PLO that

23 Plaintiff's records did not suggest serious heart disease, he also

24 noted that the combination of chest pain and leg swelling made it

25 difficult to rule out the possibility.  Chudy Decl. ¶ 13b.

26      Thereafter, on November 23, 2009, Plaintiff requested new

27 orthopedic shoes because his arch supports were not working.

28 Chudy Decl. ¶ 7 & Ex. A26.  On December 3, 2009, Plaintiff was

21

seen by his treating physician, Dr. Jamari, who approved his request for new orthopedic inserts.  Id. & Ex. A 22.  Plaintiff received the inserts from the specialty clinic on December 18, 2009.  Id. & Ex. A28.  Plaintiff did not file another medical appeal concerning his foot pain until June 10, 2010, when he complained that the arch supports were not alleviating his symptoms.  Chudy Decl. ¶ 8 & Ex. A31.  On June 21, he saw his primary care physician, who recommended that he be seen by a podiatrist.  Id. & Ex. A32.  On July 7, 2010, Dr. Chudy approved the referral to a podiatrist, and on July 8 he partially granted Plaintiff's most recent medical appeal to see a podiatrist.  At that point in time, Plaintiff's medical records showed a decreased likelihood that his swelling was a symptom of heart disease.  Id. & Ex. A19.

Plaintiff was seen by the podiatrist, Dr. Kristal, on July 22, 2010, and x-rays of his feet were ordered.  Chudy Decl. ¶ 13c & Ex. A35.  The x-rays were taken on July 27, 2010 and showed bunions.  Chudy Decl. ¶ 9 & Ex. A36.  On September 9, 2010, Dr. Kristal submitted a referral for Plaintiff to be seen by a specialist in order to obtain "functional orthotics" for his feet.  Amen. Compl. Ex. A20.  On March 29, 2011, Dr. Kristal saw Plaintiff concerning his request for a permanent lower bunk chrono because of his foot condition.  Dr. Kristal assessed Plaintiff as having bilateral subtalar joint coalition with chronic foot pain, and determined that he required orthotics and a lower bunk chrono.  Opp'n Ex. A38.  On May 26, 2011, Plaintiff was seen by prosthetic and orthotic consultant Dr. Furushiko, who found that Plaintiff had "significant pronated feet" and poorly fitted shoes; he

22

United States District Court

For the Northern District of California

1   recommended that Plaintiff receive customized orthotics and "extra

2   depth" shoes to accommodate them.  Opp'n Ex. A37.

3        Plaintiff argues Dr. Chudy acted with deliberate indifference

4   to his serious medical needs because he had a duty to ensure that

5   Plaintiff saw a podiatrist.  He claims that Dr. Chudy's

6   communications with the PLO and his decision to issue arch

7   supports show that he knew Plaintiff's swelling was not caused by

8   heart issues.  The evidence, however, shows that at the time Dr.

9   Chudy communicated with the PLO he was of the opinion that

10  Plaintiff's complaints of leg swelling and pain were heart-

11  related.  This opinion was reasonable based on Plaintiff's

12  documented history of high blood pressure, high cholesterol, heart

13  palpitations and chest pains.  Dr. Chudy also was aware that the

14  podiatrist was not readily available for routine visits and that

15  staff physicians were required to evaluate and treat prisoners for

16  non-emergency foot-related complaints.  Moreover, when Plaintiff,

17  after having received orthopedic arch supports on December 18,

18  2009, complained, six months later, on June 10, 2010, that they

19  weren't working, Dr. Chudy, on July 7, 2010, approved the request

20  for Plaintiff to see a podiatrist, which visit took place on July

21

22

23

24

25

26

27

28

1  22, 2010.[3]

2      Based on the above, the Court finds that, even when viewed in

3  the light most favorable to Plaintiff, the evidence fails to raise

4  a triable issue of fact with respect to whether Dr. Chudy acted

5  with deliberate indifference to Plaintiff's serious medical needs.

6  Instead, the evidence shows that Dr. Chudy's decisions pertaining

7  to Plaintiff's medical care were reasonable and not made in

8  conscious disregard of an excessive risk to Plaintiff's health.

9  Toguchi, 391 F.3d at 1058.   Accordingly, summary judgment is

10  GRANTED in favor of Dr. Chudy.

11  V.   Qualified Immunity

12      All Defendants argue that they are entitled to qualified

13  immunity.   The defense of qualified immunity protects "government

14  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

15      [3] Plaintiff's evidence that Dr. Kristal, in September 2010,
assessed him as having subtalar joint coalition does not change

16  the result.  Dr. Chudy's concern that Plaintiff's leg swelling and
pain might be heart-related was reasonable, even if some other

17  foot condition later was diagnosed.  Moreover, according to Dr.
Chudy, subtalar joint coalition -- a bridge between the bones in

18  the rear foot -- is an extremely rare genetic condition that
typically presents as mild pain and discomfort, inflammation,

19  recurrent sprains in the foot, or other foot abnormalities, and
does not cause leg swelling.  Chudy Decl.    ¶¶ 9-10.  Because of

20  the statistical infrequency of subtalar joint coalition and the
fact that the "bone bridge" did not appear in the x-rays of

21  Plaintiff's feet taken on July 27, 2010, Dr. Chudy maintains that
it is unlikely that he suffers from this condition.  But, even if

22  he does, many people live with the condition for their entire
lives without receiving treatment other than over-the-counter

23  orthotic inserts.  Id.  Therefore, Dr. Chudy opines that Plaintiff
received appropriate treatment by being provided with arch

24  supports in December 2009, a podiatrist visit in July 2010, and a
referral to an orthotics specialists in September 2010.  Id.

25  Plaintiff presents no medical evidence that calls Dr. Chudy's
opinion in this regard into question.

26

27

28

United States District Court
For the Northern District of California

officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted.  Id. at 202.

On the facts presented herein, viewed in the light most favorable to Plaintiff, Defendants prevail as a matter of law on their qualified immunity defense because the record establishes no constitutional violation.  Even if a constitutional violation did occur, however, Defendants reasonably could have believed their conduct was lawful.  Specifically, it would not have been clear to Defendants that they failed to take reasonable steps to abate a substantial risk of harm to Plaintiff by providing him with the above-described care and treatment for his complaints of leg swelling and pain.

Accordingly, Defendants are entitled to qualified immunity, and their motion for summary judgment is GRANTED for this reason as well.

                            CONCLUSION

For the foregoing reasons, the Court orders as follows:

**United States District Court**
For the Northern District of California

1    1.    Summary judgment is GRANTED in favor of all Defendants.

2    (Docket no. 26.)

3    2.    Plaintiff's motions for judicial notice are DENIED.

4    (Docket nos. 17, 18, 19.)

5    3.    Defendants' motion to file an amended answer to the

6    amended complaint is GRANTED. (Docket no. 23.)

7        The Clerk of the Court shall enter judgment in favor of

8    Defendants and close the file.   All parties shall bear their own

9    costs.

10        This Order terminates Docket nos. 17, 18, 19, 23 and 26.

11        IT IS SO ORDERED.

12    Dated: 3/31/2013

                                    CLAUDIA WILKEN
                                    United States District Judge